UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARK A. HEBERT, | ) |
| | ) |
| Plaintiff, | ) 13 C 4358 |
| | ) |
| vs. | ) Judge Feinerman |
| | ) |
| JPMORGAN CHASE BANK, N.A., | ) |
| | ) |
| Defendant. | ) |

**M**EMORANDUM **O**PINION AND **O**RDER

Mark Hebert brought this suit against his former employer, JPMorgan Chase Bank, N.A., alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, and retaliation for complaining about both types of discrimination. Doc. 19. With discovery closed and a jury trial set for May 23, 2016, Doc. 63, Chase has moved for summary judgment, Doc. 53. Chase's motion is granted as to the retaliation claims and as to the Title VII claim insofar as it pertains to Hebert's termination, and is denied as to the ADEA claim insofar as it pertains to the termination and as to the Title VII and ADEA claims insofar as they pertain to a hostile work environment.

**Background**

The following facts are set forth as favorably to Hebert as the record and Local Rule 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). On summary judgment, the court must assume the truth of those facts, but does not vouch for them. *See Arroyo v. Volvo Grp. N. Am.*, 805 F.3d 278, 281 (7th Cir. 2015).

1

Hebert, a white male over forty years old, began working in September 2008 as a personal banker at Chase's Northfield branch in Skokie, Illinois. Doc. 71 at ¶¶ 1-2, 6-7. In November 2009, Hebert transferred to Chase's Skokie Glenview branch in Wilmette, Illinois, and then in January 2011 transferred again, this time to Chase's Skokie Dempster branch in Skokie, Illinois. *Id*. at ¶¶ 8-9. During his time at the Skokie Glenview and Skokie Dempster branches, Hebert worked with Donna Pedroza. *Id*. at ¶ 22. Pedroza, a Hispanic female, is a mortgage banker, a different position than personal banker. *Ibid*.; Doc. 71-3 at 12. For part of his time at those branches, Hebert's manager was John Lopez, a Hispanic male under forty years old. Doc. 71 at ¶¶ 17-18, 21.

Over the course of his employment at Chase, Hebert received several written disciplinary warnings for violating Chase policy. The warnings alleged unprofessional behavior, *id*. at ¶¶ 28-31 (October 2009); unsatisfactory performance and inappropriate behavior, *id*. at ¶¶ 32-34 (June 2010 and September 2012); and failure to report a personal bankruptcy filing, *id*. at ¶ 35 (October 2012). Hebert's conduct was the subject of complaints to Chase from a coworker and a non-Chase employee. *Id*. at ¶¶ 44-47. In each of his 2011 annual performance review, 2012 mid-year performance review, and 2012 annual performance review, Hebert received an overall rating of "Needs Improvement." *Id*. at ¶¶ 36-39. Pedroza was not involved in issuing any of these warnings or evaluations. *Id*. at ¶ 26.

Hebert believes that the perception of his poor performance was the result of a multi-member conspiracy spearheaded by Pedroza. Doc. 71 at ¶¶ 54-55; Doc. 71-1 at 28-29. Hebert testified at his deposition that Pedroza "poison[ed] the well" concerning his reputation at Chase, steered clients away from him, and "unethically influenced" Lopez against him. Doc. 71 at ¶ 56; Doc. 71-1 at 32, 49, 94. Hebert further testified that Pedroza was a "bully" who refused to work

with him and who stated that she "only want[ed] young people" at Chase. Doc. 71-1 at 14, 46, 49, 57-58, 97; Doc. 76 at ¶¶ 1-5.

According to Hebert, Lopez told him that Chase "ha[s] different standards for [Hebert] because" he was "older" than the typical employee. Doc. 76 at ¶ 7. Hebert asserts that Lopez intentionally sent work to non-Caucasians, "nitpicked" Hebert's work product, and made complaints of "such a nebulous nature" that they were impossible to address or resolve. *Id*. at ¶¶ 9-11. Hebert contends that Pedroza's conspiratorial efforts and Lopez's capricious and race- and age-motivated management created a hostile environment in which his coworkers frequently spoke Spanish to "intentionally isolate[]" him, told him that he would not get clients because he was not Hispanic, and commented about his age. *Id*. at ¶¶ 12-16, 37.

Hebert complained to Chase's human resources department about what he said was age and race discrimination. *Id*. at ¶ 20. He also complained to Lopez directly. *Id*. at ¶ 21. Several other Chase employees also complained to Lopez about Pedroza, with one calling her a "man hater." *Id*. at ¶¶ 27-28. Lopez told Hebert to "stop talking to HR and stop talking to managers" about Pedroza's behavior. *Id*. at ¶¶ 22, 29. Aware of Hebert's complaints, Pedroza continued to "withhold[] … information" and "steer[] clients away" from him. *Id*. at ¶ 23.

On Lopez's recommendation, Chase terminated Hebert's employment on February 22, 2013. Doc. 54-2 at 41; Doc. 71 at ¶ 10. Lopez's recommendation set forth four grounds for dismissal. Doc. 54-2 at 41; Doc. 71 at ¶ 11. Three of the four grounds concerned incidents that allegedly occurred on February 14, 2013: being rude to a customer; being disruptive and raising his voice at another employee; and making an inappropriate comment regarding the other employee's personal life. Doc. 54-2 at 41; Doc. 71 at ¶ 11. The fourth was that Hebert "was not picking up the phone to take customer calls despite being coached" to do so "several times

3

before." Doc. 54-2 at 41. Chase's human resources department and management reviewed and approved Hebert's termination. Doc. 71 at ¶ 12. Pedroza was not involved in the decision to terminate Hebert, and she did not have the ability or authority to terminate him. *Id.* at ¶¶ 24, 26.[*]

**Discussion**

I.  **Hostile Work Environment Claims**

The complaint alleges that Hebert was subjected to a hostile work environment on account of his race and age in violation of Title VII and the ADEA, respectively. Doc. 19 at ¶¶ 10-11, 25. Chase's initial brief argues that Hebert was not *terminated* on account of his race or age or in retaliation for complaining about discrimination, Doc. 55, but nowhere does it argue that Hebert was not subjected to a *hostile work environment*, which is another form of discrimination prohibited by Title VII and (probably) the ADEA. *See Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("Title VII prohibits employers from discriminating against employees because of their race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). And employers are prohibited from requiring people to work in a discriminatorily hostile or abusive environment.") (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)) (internal quotation marks omitted); *Fugate v. Dolgencorp, LLC*, 555 F. App'x 600, 603 n.1 (7th Cir. 2014) ("We have assumed without deciding that plaintiffs may bring a

---

[*] Paragraph 24 of Chase's Local Rule 56.1(a)(3) statement asserts that "Pedroza did not have the ability or authority to terminate [Hebert's] employment"; Hebert's Local Rule 56.1(b)(3)(B) response denies that assertion but does not cite any record material to support the denial. Doc. 71 at ¶ 24. This violates Local Rule 56.1(b)(3)(B), which requires the non-movant to provide "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. L.R. 56.1(b)(3)(B). Accordingly, ¶ 24 of Chase's Local Rule 56.1(a)(3) statement is deemed admitted. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009).

4

claim of a hostile work environment under the ADEA.") (citing cases); *see also Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011) (recognizing an ADEA hostile work environment claim); *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834 (6th Cir. 1996) (same).

Hebert's opposition brief noted Chase's failure to challenge his hostile work environment claims, Doc. 70 at 6, and because Chase did not argue for summary judgment on those claims, Hebert was not obligated to defend them in his brief. *See Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 820 (7th Cir. 2015); *United States v. King-Vassel*, 728 F.3d 707, 716 (7th Cir. 2013) ("As a general matter, if the moving party does not raise an issue in support of its motion for summary judgment, the nonmoving party is not required to present evidence on that point, and the district court should not rely on that ground in its decision.") (internal quotation marks omitted); *Titran v. Ackman*, 893 F.2d 145, 148 (7th Cir. 1990) ("When a party moves for summary judgment on ground A, the opposing party need not address grounds B, C, and so on."); *Schwab v. N. Ill. Med. Ctr.*, 42 F. Supp. 3d 870, 885-86 (N.D. Ill. 2014); *Rogers v. Waukegan Pub. Sch. Dist. 60*, 924 F. Supp. 2d 940, 954 (N.D. Ill. 2013). Accordingly, Chase has forfeited any argument for summary judgment on the hostile work environment claims. *See Costello v. Grundon*, 651 F.3d 614, 635 (7th Cir. 2011) ("As the moving party, the [defendant] had the initial burden of identifying the basis for seeking summary judgment.").

## II. Retaliation and Failure-to-Promote Claims

The complaint alleges that Chase retaliated against Hebert for complaining about race and age discrimination. Doc. 19 at ¶¶ 31-32. Chase's initial brief does argue for summary judgment on the Title VII and ADEA retaliation claims. Doc. 55 at 13-14. Yet Hebert's opposition brief mentions retaliation only in passing, Doc. 70 at 1, 5-6, and it does not address Chase's legal and factual arguments for summary judgment on the retaliation claims.

5

Accordingly, Hebert has forfeited those claims. *See Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 833 (7th Cir. 2014) ("[A]s the district court found, the musical diversity argument was forfeited because it was perfunctory and underdeveloped."); *G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court. That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate.") (citations omitted); *Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 386 (7th Cir. 2012) ("[T]he forfeiture doctrine applies not only to a litigant's failure to raise a general argument … but also to a litigant's failure to advance a specific point in support of a general argument."); *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) ("We have made clear in the past that it is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel, and we have warned that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (internal quotation marks and alterations omitted); *Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 924 (7th Cir. 2007) ("[A] party forfeits any argument it fails to raise in a brief opposing summary judgment.").

The same holds for Hebert's claim that Chase did not promote him due to his race and age. Doc. 19 at ¶¶ 18, 27. Chase moved for summary judgment on the promotion claims, arguing that there is no evidence that Hebert applied for a promotion or that he was qualified for a promotion, Doc. 55 at 15, and Hebert's opposition brief mentions failure to promote only in passing, Doc. 70 at 1. Accordingly, Hebert has forfeited those claims as well.

### III. Title VII Termination Claim

The complaint alleges that Chase intentionally discriminated against Hebert on the basis of his race by terminating him. Doc. 19 at ¶¶ 9, 13-14, 17. A Title VII race discrimination plaintiff may seek to defeat summary judgment under the direct or indirect methods of proof. *See Carothers v. Cook Cnty.*, __ F.3d __, 2015 WL 9268078, at *6 (7th Cir. Dec. 21, 2015); *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012).

"Under the 'direct method,' the plaintiff may avoid summary judgment by presenting sufficient evidence, either direct or circumstantial, that the employer's discriminatory animus motivated an adverse employment action." *Harper v. Fulton Cnty.*, 748 F.3d 761, 765 (7th Cir. 2014) (internal quotation marks omitted). The "appropriate focus" under the direct method "is not whether the evidence offered is direct or circumstantial but rather whether the evidence points directly to a discriminatory reason for the employer's action." *Milligan*, 686 F.3d at 389 (internal quotation marks omitted); *see also Everett v. Cook Cnty.*, 655 F.3d 723, 729 (7th Cir. 2011); *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 672 (7th Cir. 2011). "Direct evidence is evidence that would prove discriminatory conduct on the part of the employer without reliance on inference or presumption. Such evidence essentially requires an admission by the decision-maker that [his] actions were based upon the prohibited animus." *Harper v. Fulton Cnty.*, 748 F.3d at 765 (internal quotation marks and citations omitted); *see also Coleman*, 667 F.3d at 860; *Everett*, 655 F.3d at 729; *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 587 (7th Cir. 2011). The record unsurprisingly includes no direct evidence that Hebert was terminated due to his race.

In the absence of direct evidence, a plaintiff invoking the direct method must "present … circumstantial evidence that creates a convincing mosaic of discrimination on the basis of race."

7

*Carothers*, 2015 WL 9268078, at *6 (internal quotation marks omitted); *see also Chaib v. Indiana*, 744 F.3d 974, 982 (7th Cir. 2014); *Perez v. Thorntons, Inc.*, 731 F.3d 699, 710 (7th Cir. 2013); *Morgan v. SVT, LLC*, 724 F.3d 990, 995-96 (7th Cir. 2013); *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1105 (7th Cir. 2012). "That circumstantial evidence, however, must point directly to a discriminatory reason for the employer's action." *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (citations and internal quotation marks omitted); *see also Everett*, 655 F.3d at 729 (explaining that circumstantial evidence is "evidence that points to discriminatory animus through a longer chain of inferences"); *Davis*, 651 F.3d at 672 ("Whether deemed a chain or mosaic, the assembled evidence must point directly to a discriminatory reason for the employer's action") (internal quotation marks omitted). Circumstantial evidence typically falls into one of three categories: "(1) ambiguous statements or behavior towards other employees in the protected group; (2) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (3) evidence that the employer offered a pretextual reason for an adverse employment action." *Morgan*, 724 F.3d at 995-96; *see also Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 734 (7th Cir. 2011). To overcome summary judgment, circumstantial evidence need not "combine to form a tidy, coherent picture of discrimination, in the same way the tiles of a mosaic come together to form a tidy, coherent image, in order for a plaintiff to survive summary judgment." *Morgan*, 724 F.3d at 997. Rather, "[w]hen the plaintiff can assemble from various scraps of circumstantial evidence enough to allow the trier of fact to conclude that it is more likely than not that discrimination lay behind the adverse action, then summary judgment for the defendant is not appropriate." *Greengrass v. Int'l Monetary Sys.*, 776 F.3d 481, 486 (7th Cir. 2015); *see also Muhammad v. Caterpillar, Inc.*, 767 F.3d 694, 700 (7th Cir. 2014).

Hebert maintains that Lopez's "laissez[-]faire attitude allowed a hostile environment to fester," creating a situation where "aspersions to [Hebert's] character[] could be made," which in turn led to his termination on account of his race. Doc. 70 at 2-3. Hebert adds that his coworkers' statements "about [his] … race provide direct evidence showing racial … animus toward[]" him. *Id*. at 6. However, Hebert offers no evidence that anybody with *decision-making* authority over his employment bore racial animus toward him.

For example, Hebert testified at his deposition that Nelson Esparza told Hebert that he was not "[Esparza's] people," meaning that Hebert was not Hispanic. Doc. 71-1 at 17; Doc. 76 at ¶ 16. Yet the record does not indicate Esparza's position at Chase, and Hebert offers no evidence that Lopez, his direct superior and the individual who recommended his termination, made similar comments or held similar views. The fact that some of Hebert's coworkers commented unfavorably on his race, distasteful as it may be, cannot provide the necessary circumstantial evidence to "allow[] a jury to infer intentional discrimination by the decision-maker." *Harper v. Fulton Cnty.*, 748 F.3d at 765-766 (holding that circumstantial evidence about pay discrimination reported by the plaintiff's coworkers was not "strong enough circumstantial evidence to allow a jury to infer intentional discrimination by the Board," which actually made the decisions about her pay).

The "cat's paw" theory set forth in *Slaub v. Proctor Hospital,* 562 U.S. 411, 419-20 (2011), does not save Hebert's race discrimination claim. That theory allows for employer liability where "an employee is fired … by a supervisor who himself has no discriminatory motive, but who has been manipulated by a subordinate who does have such a motive and intended to bring about the adverse employment action." *Cook v. IPC Int'l Corp.*, 673 F.3d 625, 628 (7th Cir. 2012); *see also Simpson v. Beaver Dam Cmty. Hosp., Inc.*, 780 F.3d 784, 798 (7th

Cir. 2015) (under the cat's paw theory, "an employer can be held liable where a non-decision-making employee with discriminatory animus provided factual information or input that may have affected the adverse employment action.") (internal quotation marks omitted); *Smith v. Bray*, 681 F.3d 888, 897-900 (7th Cir. 2012) (discussing the cat's paw theory). Hebert contends that Pedroza was the "ring-leader" of a conspiracy that "'poisoned the well' with respect to his reputation with his co-workers and customers," and that Lopez "used this animus as fodder for [Hebert's termination]." Doc. 70 at 3, Doc. 71 at ¶¶ 54-56. But other than his subjective beliefs, Hebert adduces no evidence that Pedroza manipulated Lopez or any other decisionmaker into firing Hebert, which is a significant gap given that Pedroza was not Hebert's manager and was not involved in issuing any of Hebert's warnings or performance reviews or the decision to terminate his employment. *See Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 548 (7th Cir. 2011) ("If the subjective beliefs of plaintiffs in employment discrimination cases could, by themselves, create genuine issues of material fact, then virtually all defense motions for summary judgment in such cases would be doomed.") (internal quotation marks omitted); *Mlynczak v. Bodman*, 442 F.3d 1050, 1058 (7th Cir. 2006). Given this lack of evidence, the cat's paw theory does not apply. *See Carothers*, 2015 WL 9268078, at *6 ("[A]lthough Brenda Welch was previously sued for race discrimination, Carothers offers no evidence that Brenda Welch had anything to do with the JDC's decision to termination Carothers' employment."); *Johnson v. Koppers*, 726 F.3d 910, 915 (7th Cir. 2013) (rejecting application of the cat's paw theory where the plaintiff failed to show that a non-decisionmaking coworker's animus was "the proximate cause of [her] termination"); *Brown*, 700 F.3d at 1108 (same where the plaintiffs did not "present[] any affirmative evidence that anybody improperly influenced the decision-makers"); *Harper v. C.R. Eng., Inc.*, 687 F.3d 297, 309 (7th Cir. 2012) (same where "there is no evidence in the record to

suggest that [the decisionmaker's] decision to fire [the plaintiff] was in any way influenced by [the individual with animus]").

Nor is there any evidence showing that Chase favored non-white employees similarly situated to Hebert. "Similarly situated employees must be directly comparable to the plaintiff in all material respects," but they need not be "clones." *Coleman*, 667 F.3d at 846 (internal quotation marks omitted); *see Sweatt v. Union Pac. R.R. Co.*, 796 F.3d 701, 709 (7th Cir. 2015). As a general rule, the plaintiff must show that a comparator "(1) dealt with the same supervisor, (2) was subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish his conduct or the employer's treatment of him." *Orton-Bell v. Indiana*, 759 F.3d 768, 777 (7th Cir. 2014) (alterations and internal quotation marks omitted). Hebert's complaint alleges that "[o]ther individuals who were not Caucasian were not terminated," Doc. 19 at ¶ 12, but on summary judgment he has adduced no evidence that would allow a reasonable jury to find that any non-white employee was similarly situated to him and treated more favorably than he. Specifically, Hebert points to no non-Caucasian individual whom Lopez managed and engaged in even approximately the same conduct, much less one who did so and was not terminated. Hebert therefore "provides no evidence, statistical or otherwise, to corroborate his belief" that Chase treated similarly situated non-Caucasian employees better than it treated Herbert. *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1116 (7th Cir. 2009).

Hebert retorts that Pedroza "falsified account numbers" and was not terminated; this information, Hebert testified at his deposition, came from "another loan officer." Doc. 76 at ¶ 18. That evidence is not admissible. "To be considered" on summary judgment, "statements by the unidentified parties must either be non-hearsay pursuant to Federal Rule of Evidence 801,

11

or must qualify for a hearsay exception pursuant to Federal Rule of Evidence 803." *Wigod v. Chi. Mercantile Exch.*, 981 F.2d 1510, 1519 (7th Cir. 1992); *see also Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment."). A coworker's out-of-court statement may fall outside the hearsay rule under Federal Rule of Evidence 801(d)(2)(D), but only if the coworker's "duties … encompass[ed] some responsibility related to the decisionmaking process affecting the employment action." *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 822 (7th Cir. 2011); *see also Stephens v. Erickson*, 569 F.3d 779, 793 (7th Cir. 2009) ("For an agent's statement regarding an employment action to constitute an admission, she need not have been personally involved in that action, but her duties must encompass some responsibility related to the decisionmaking process affecting the employment action.") (internal quotation marks omitted). Hebert does not even name the out-of-court declarant who told him about Pedroza's "falsified account numbers," let alone provide a basis for believing that the declarant had personal knowledge of Pedroza's alleged infraction or some responsibility for decisions regarding her employment, so the declarant's statement is inadmissible. *See Greene v. V.I. Water & Power Auth.*, 557 F. App'x 189, 199 (3d Cir. 2014) (affirming the district court's holding that "while comments made by unnamed employees could fall under … 801(d)(2)(D), as the unnamed declarant cannot be identified[,] there is not a sufficient evidentiary foundation to establish" the admissibility of that declarant's statement); *Zaken v. Boerer*, 964 F.2d 1319, 1323-24 (2d. Cir. 1992) (holding that an out-of-court statement by an unidentified declarant regarding the reasons for the plaintiff's termination was inadmissible hearsay).

That said, Chase does admit that Pedroza received a written warning in 2011 for providing inaccurate numbers on her loan applications. Doc. 76 at ¶ 32. But that does not make

Pedroza similarly situated to Hebert, given that they held different positions and had different supervisors. Doc. 71 at ¶ 23; *see Zayas v. Rockford Mem'l Hosp.*, 740 F.3d 1154, 1158 (7th Cir. 2014) ("Although precise equivalence is not required, a plaintiff still needs to show that a comparator employee was treated more favorably by the same decisionmaker.") (internal quotation marks omitted); *Perez*, 731 F.3d at 707 ("The point of determining whether different decision makers were responsible is to determine whether two employees were held to different standards by virtue of the different perspectives and expectations of different and independent decision makers. The inference of discrimination is weaker when there are independent decision makers[,] since they may rely on different factors when deciding whether, and how severely, to discipline an employee.") (internal quotation marks omitted); *Coleman*, 667 F.3d at 847 ("The similarly-situated requirement normally entails the existence of a common supervisor. When the same supervisor treats an otherwise equivalent employee better, one can often reasonably infer that an unlawful animus was at play. The inference of discrimination is weaker when there are different decision-makers, since they may rely on different factors when deciding whether, and how severely, to discipline an employee.") (internal quotation marks and citations omitted).

Hebert, moreover, provides no evidence that Pedroza's overall performance at Chase was in any way comparable to his. The record shows that Hebert received discipline throughout his 4.5 years at Chase at three different locations and from different managers. Doc. 71 at ¶¶ 6, 8-9, 13-21, 28-39. He received an overall "Needs Improvement" rating on three consecutive performance reviews prior to his termination. *Id*. at ¶¶ 36-38. Hebert did not receive a "Needs Improvement" rating prior to Lopez's becoming his manager in 2011, Doc. 76 at ¶ 31, but Lopez was also Hebert's manager in 2009 and 2010, Doc. 71 at ¶ 17, during which time Hebert did not receive a "Needs Improvement" rating. Hebert received several warnings for infractions such as

13

unprofessional and inappropriate behavior, violations of policies and procedures, and unsatisfactory performance. *Id*. at ¶¶ 28, 30, 32-33. As for the conduct that Lopez cited in recommending his termination, Hebert failed to perform duties that were assigned to his position, that his supervisor had asked him to do, and that he was trained to do. Doc. 54-2 at 41; Doc. 71 at ¶ 11. Hebert claims that he "received awards and other recognition" at Chase, but he provides no evidence of what these awards were, when he received them, who bestowed them, or what they recognized. Doc. 70 at 11.

There is no evidence that Pedroza was anywhere close to being a similarly weak performer. That also defeats Hebert's contention that he was similarly situated to Pedroza. *See Harper v. C.R. Eng.*, 687 F.3d at 311 ("Mr. Harper failed to identify any other instructor who had a comparable attendance record, and his argument with respect to the disparities in C.R. England's treatment of its employees is therefore unsupported by the record."); *Argyropoulos v. City of Alton*, 539 F.3d 724, 735 (7th Cir. 2008) ("[Argyropoulos] has not identified any other employee who engaged in comparable misconduct. … Only if the other employee had engaged in similar misconduct while employed by the City would this employee possibly serve as a useful comparator. Argyropoulos also points out that Duty's job performance had been criticized, but those criticisms did not identify any misconduct remotely similar to [Argyropoulos's].") (alteration omitted); *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 330-31 (7th Cir. 2002) ("Country Mutual's criticisms of Mason and Dempski pale in comparison to those lodged by the company against Peele (i.e., nine critical written evaluations in 18 months …) and therefore neither is similarly situated to [Peele].").

Hebert also contends that prior to recommending his termination, Lopez had not recommended terminating any employee "except for three probational employees who failed to

14

obtain requisite banking licenses." Doc. 70 at 7; Doc. 76 at ¶ 26. This does not establish that any employee similarly situated to Hebert was treated more favorably than he was, because it says nothing about any employee that Lopez *failed* to terminate. Rather, it shows only the immaterial fact that the three employees whom Lopez previously recommended for termination were unlike Hebert.

A plaintiff who cannot forestall summary judgment under the direct method may rely on the indirect method established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). However, Hebert's discussion of the indirect method focuses almost exclusively on his ADEA claim and barely mentions race discrimination; in fact, the section describing the plaintiff's burden to make a *prima facie* case is entitled "The McDonnell Douglas Indirect Proof Method in Age Discrimination Cases" and references age and not race discrimination. Doc. 70 at 8-13. By failing to make any coherent argument that he satisfies the indirect method as to this Title VII termination claim, Hebert forfeited reliance on the indirect method for that claim. *See Batson*, 746 F.3d at 833; *G & S Holdings*, 697 F.3d at 538; *Milligan*, 686 F.3d at 386; *Judge*, 612 F.3d at 557; *Salas*, 493 F.3d at 924.

## IV.    ADEA Termination Claim

The complaint alleges that Chase intentionally discriminated against Hebert on the basis of his age by terminating him. Doc. 19 at ¶ 24; Doc. 19-1. ADEA claims are analyzed under the same framework as Title VII claims. *See Nagle*, 554 F.3d at 1114 n.3 ("We apply the same analytical framework to employment discrimination cases whether they are brought under the ADEA or Title VII."). Accordingly, for his age discrimination claims, Hebert may seek to defeat summary judgment under the direct or indirect methods of proof. *See Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060 (7th Cir. 2003) ("A plaintiff may prove employment discrimination

under the ADEA, Title VII, and § 1981, using either the 'direct method' or 'indirect method.'"). As noted above, "[u]nder the 'direct method,' the plaintiff may avoid summary judgment by presenting sufficient evidence, either direct or circumstantial, that the employer's discriminatory animus motivated an adverse employment action," *Harper v. Fulton Cnty.*, 748 F.3d at 765, with resort to three categories of circumstantial evidence: "(1) ambiguous statements or behavior towards other employees in the protected group; (2) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (3) evidence that the employer offered a pretextual reason for an adverse employment action." *Morgan*, 724 F.3d at 995-96.

Hebert has adduced sufficient evidence to defeat summary judgment on his ADEA termination claim under the direct method. Hebert testified that Lopez told him that Chase "ha[s] different standards for [Hebert] because [Hebert was] older" than the other employees. Doc. 76 at ¶ 7. Hebert also testified to a litany of age-related slights, including that a group of coworkers, including Lopez, made "numerous comments about" his age. *Id.* at ¶¶ 5, 13-15, 21. Viewing the facts as favorably to Hebert as possible, a reasonable jury could find that Chase, serving as Lopez's cat's paw, fired Hebert due to his age. *See Arroyo*, 805 F.3d at 285-86; *Ezell v. Potter*, 400 F.3d 1041, 1051 (7th Cir. 2005); *Volovsek v. Wis. Dep't of Agric., Trade & Consumer Protection*, 344 F.3d 680, 690 (7th Cir. 2003); *Hunt v. City of Markham*, 219 F.3d 649, 652-53 (7th Cir. 2000); *Huff v. UARCO, Inc.*, 122 F.3d 374, 384-86 (7th Cir. 1997).

Chase protests that because Hebert's evidence consists of "conclusory allegations" coming solely from his deposition, Hebert has "failed to meet his evidentiary burden" to demonstrate disparate treatment. Doc. 75 at 3. Chase is wrong. As the Seventh Circuit has explained, while without more "biased comments do not establish discriminatory motive," *Perez*,

16

731 F.3d at 709; *see also Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 684-85 (7th Cir. 2014) ("We are typically very cautious about relying on 'stray remarks' as evidence of discriminatory animus."), "epithets or stray remarks may be direct or circumstantial evidence of intentional discrimination if they are sufficiently connected to the employment decision, *i.e.*, made by the decisionmaker, or those who influence the decisionmaker, and made close in time to the adverse employment decision." *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 264, 272 (7th Cir. 2004); *see also Holtz v. Rockefeller & Co.*, 258 F.3d 62, 78 (2d Cir. 2001) ("Holtz's testimony is the only evidence in the record directly ascribing discriminatory intent to Cowan or RCI, and consists largely of her uncorroborated accounts of what Cowan said. We nonetheless conclude that her statements raise a genuine issue of fact as to the defendant's intent."). Although the record does not establish precisely when Lopez made his statement that Hebert was subject to "different standards" because he was older, "age[-] and race-based comments, in some cases occurring months before or after the alleged discriminatory act and in others at unspecified times, can still be considered under the direct method." *Nagle*, 554 F.3d at 1115. Lopez's comment, which directly linked the standards by which he evaluated Hebert's job performance to Hebert's age, together with Lopez's other comments about Hebert's age and the fact that Lopez was Hebert's supervisor and recommended his termination, could permit a reasonable jury to find that Hebert was fired due to his age.

Finally, Chase argues that Hebert cannot establish that his age was the "but for" cause of his termination. Doc. 55 at 12-13; Doc. 75 at 7. In effect, Chase contends that because Hebert's complaint alleges both race and age discrimination, his ADEA claim necessarily fails because his termination arose from the kind of "mixed motives" that cannot ground an ADEA claim after *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009). *See id*. at 176 ("Thus, the ordinary

17

meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act. To establish a disparate-treatment claim under the plain language of the ADEA, therefore, a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision.") (citations omitted); *see also Ripberger v. Corizon, Inc.*, 773 F.3d 871, 880 (7th Cir. 2014); *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 603-04 (7th Cir. 2012); *Barton v. Zimmer, Inc.,* 662 F.3d 448, 455 & n.3 (7th Cir. 2011). This argument fails to persuade. The allegations of Hebert's complaint are irrelevant on summary judgment, *cf. Taylor v. United States*, 287 F.3d 658, 661 (7th Cir. 2002) ("Pleadings are irrelevant at the summary judgment stage.") (citing Fed. R. Civ. P. 56(e)); all that matters is the evidence adduced at this stage and, as shown above, that evidence would not permit a reasonable jury to find that Hebert was fired due to his race. The only discriminatory animus supported by the record is age-related, so there is no mixed motive within the meaning of *Gross*.

## Conclusion

For the foregoing reasons, Chase's summary judgment motion is granted as to the retaliation claims and as to the Title VII claim insofar as it pertains to Hebert's termination. The ADEA claim as it pertains to the termination, and the Title VII and ADEA claims as they pertain to a hostile work environment, will proceed to trial on May 23, 2016.

January 21, 2016

United States District Judge